UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RONALD BRENNAN JR.,

                    Plaintiff,

          v.

ANTHONY ASTON, et al.,

                    Defendants.

Case No. C17-1928-JCC-JPD

REPORT AND RECOMMENDATION

## I.       INTRODUCTION

Plaintiff is a Snohomish county pretrial detainee who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against 63 employees of the Snohomish County Jail.  *See* Dkt. 27.  Upon screening his amended complaint, the Court determined that although plaintiff alleged some viable claims, many of his factual allegations did not amount to constitutional violations.  Dkt. 25.  The Court granted plaintiff leave to file a second amended complaint ("SAC"), which plaintiff has done.  Dkt. 27.  Plaintiff also filed a "Motion to Add Supplemental Information to Amended Complaint."  Dkt. 39.

Like his first amended complaint, his SAC alleges some viable claims that should survive screening, but fails to state claims against many of the defendants.  Because plaintiff already has

REPORT AND RECOMMENDATION - 1

been advised of the legal standards and given an opportunity to amend, the Court recommends that his deficient claims be dismissed with prejudice and without leave to amend, and that his properly pleaded claims be served on the remaining defendants.  The Court also recommends that plaintiff's motion to supplement be granted in part and denied in part, as explained below.

## II.    GENERAL LEGAL STANDARDS

A.    Screening

Once a complaint is filed *in forma pauperis*, the Court must dismiss it prior to service if it "fails to state a claim on which relief can be granted."  28 U.S.C. § 1915(e)(2)(b)(ii); *see Talley v. Jackson*, 2015 WL 3796339, at *1 (W.D. Wash. June 18, 2015) (citations omitted).  To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  The factual allegations must be "enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint may be dismissed if it lacks a cognizable legal theory or states insufficient facts to support a cognizable legal theory.  *Zixiang v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

The Court holds *pro se* plaintiffs to less stringent pleading standards than represented plaintiffs and liberally construes a *pro se* complaint in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Nevertheless, § 1915(e) "not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1229 (9th Cir. 2000) (en banc).  When dismissing a complaint under § 1915(e), the Court gives *pro se* plaintiffs leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

REPORT AND RECOMMENDATION - 2

B.    Section 1983 standard

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).  A plaintiff may not hold supervisory personnel liable under § 1983 for constitutional deprivations under a theory of supervisory liability.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

III.    DISCUSSION

A.    Screening of plaintiff's second amended complaint

Plaintiff's SAC raises a host of complaints against a long list of Snohomish County Jail employees.  Below, the Court discusses each type of claim and the relevant factual allegations. Given the length of plaintiff's SAC, the Court does not discuss each and every allegation. Nevertheless, the Court has carefully considered them all and determined that any factual allegations that are not specifically discussed herein fail to state a claim upon which relief may be granted.  The claims that should be allowed to go forward are summarized at the end of this section.

1.    *Allegations against unspecified defendants*

Throughout plaintiff's SAC, he complains about unspecified defendants.  For example, he alleges that after he files a public disclosure request, "there are *a few* [staff members] that continue to approach me and demand to know why I have filed this request about them."  Dkt.

27-1 at 1 (emphasis added). As another example, plaintiff alleges that "*the staff* here at the Snohomish County Corrections continue to retaliate against me . . . .*" Id.* at 55 (emphasis added); *see also id.* at 57 (allegation that "some deputies" have been trying to have him removed from law library access). To state a § 1983 claim, a plaintiff must allege how *individually named defendants* violated his constitutional rights. *Arnold*, 637 F.2d at 1355. To the extent plaintiff does not make specific factual allegations against individually named defendants, he fails to state a claim upon which relief may be granted.

2.    *Claims related to other inmates*

Several times in his SAC, plaintiff complains about actions taken against other inmates. *E.g.*, Dkt. 27-1 at 33 (alleging that Deputy Nicholas used excessive force against another inmate). Plaintiff can only bring claims for violations of his own constitutional rights. Therefore, any claims related to other inmates should be dismissed with prejudice and without leave to amend.

3.    *Grievances*

Plaintiff complains that Supervisor Kimberly Parker placed him on grievance restriction and told him classification staff would provide him three grievance forms a week, but he did not always receive his forms.[1] Dkt. 27-1 at 52-54. Plaintiff does not identify which individual staff members failed to provide him the forms. Plaintiff also complains, though out his SAC, about how grievances were answered and that they were not answered.

Prisoners have a First Amendment right to meaningfully access the courts and to file prison grievances. *See Lewis v. Casey*, 518 U.S. 343, 361-62 (1996); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Policies and regulations that impinge on First Amendment rights

---

[1] The Court will discuss plaintiff's retaliation claims related to filing grievances in a subsequent section.

REPORT AND RECOMMENDATION - 4

1   may be upheld only if they are reasonably related to legitimate penological interests.  *Turner v.*

2   *Safley*, 482 U.S. 78, 89 (1987) (setting forth four-factor test to determine whether such policies

3   and regulations should be upheld).  Prisoners do not, however, have standalone due process

4   rights to a particular administrative grievance process.  *Mann v. Adams*, 855 F.2d 639, 640 (9th

5   Cir. 1988); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Allen v. Wood*, 970 F. Supp.

6   824, 832 (E.D. Wash. 1997); *Stewart v. Block*, 938 F. Supp. 582, 588 (C.D. Cal. 1996).

7       Plaintiff should be allowed to proceed on his First Amendment claim against Supervisor

8   Parker for placing him on grievance restriction.  He alleges that he was never infracted for filing

9   frivolous grievances and that he was placed on restriction even though he used the grievance

10  system in good faith to raise legitimate issues.  Dkt. 27-1 at 53.  Plaintiff, however, should not be

11  permitted to proceed against Supervisor Parker for the unnamed classification staff's failure to

12  timely provide him with his allotted grievance forms.  He does not allege that Supervisor Parker

13  deprived him of the grievance forms or that she directed others to do so.  *See Taylor*, 880 F.3d at

14  1045 (supervisor only liable for constitutional violations of subordinates if she participated in or

15  directed the violations, or knew but failed to act to prevent them).

16      Plaintiff's complaints related to how his grievances were processed should be dismissed

17  with prejudice and without leave to amend.  As there is no right to any particular grievance

18  process, it is impossible for plaintiff's due process rights to have been violated by ignoring his

19  grievances, failing to properly process them, or responding to them in a way that was

20  unfavorable to plaintiff.

21      4.    *Classification issues*

22      Plaintiff complains about his classification and housing within the jail.  *See, e.g.*, Dkt. 27-

23  1 at 43, 49-51, 57, 79-81, 83, 87.  The Fourteenth Amendment requires due process before

1   individuals are deprived of protected liberty or property interests.  A prisoner, however, does not

2   have a liberty interest in a particular classification status.  *Hernandez v. Johnston*, 833 F.2d 1316,

3   1318 (9th Cir. 1987) (citing *Moody v. Daggett*, 429 U.S. 78 (1976)).  Thus, plaintiff's challenge

4   to how he has been classified and where he has been housed does not implicate federal

5   constitutional concerns.  These claims should be dismissed with prejudice and without leave to

6   amend.

7   　　　　5.   *Retaliation*

8   　　　　Plaintiff alleges numerous defendants retaliated against him.  *See, e.g.*, Dkt. 72-1 at 1

9   (listing 24 defendants under the heading "Staff Retaliation").  The First Amendment protects

10  prisoners' right to file grievances and pursue civil rights litigation in federal court without

11  retaliation.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Silva v. DiVittorio*, 658 F.3d

12  1090, 1104 (9th Cir. 2011).  "Within the prison context, a viable claim of First Amendment

13  retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse

14  action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

15  (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

16  reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68

17  (9th Cir. 2005).

18  　　　　"The prisoner must show that the type of activity in which he was engaged was

19  constitutionally protected, that the protected conduct was a substantial or motivating factor for

20  the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological

21  interest."  *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015) (citing *Hines v. Gomez*,

22  108 F.3d 265, 267-68 (9th Cir. 1997)); *see also Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.

23  1995) (plaintiff bears burden of pleading and proving the absence of legitimate correctional goals

1  for the conduct of which he complains).  Additionally, "a plaintiff who fails to allege a chilling

2  effect may still state a claim if he alleges he suffered some other harm."  *Brodheim v. Cry*, 584

3  F.3d 1262, 1269 (9th Cir. 2009).

4              a.      *Properly pleaded retaliation claims*

5          Liberally construing plaintiff's SAC in his favor, the following retaliation claims should

6  survive screening.

7          Plaintiff alleges that Deputy Nicholas threatened to infract him for requesting a kite

8  because he was on kite restriction; in fact, plaintiff was not on kite restriction.  Dkt. 27-1 at 19-

9  21.  Plaintiff thus alleges that Deputy Nicholas took an adverse action (threatening him) because

10 he requested a kite and that the threat did not reasonably advance a legitimate correctional goal

11 because plaintiff was not on kite restriction.  Such a threat would chill an inmate's First

12 Amendment rights.

13         Plaintiff alleges that although he used the grievance system in good faith in an attempt to

14 hold Deputy Nicholas responsible for violating his rights, the deputy infracted him for filing

15 false and harassing grievances.  *Id.* at 27-29.  Plaintiff further alleges that two days after

16 Snohomish County Corrections notified Deputy Nicholas that plaintiff filed public disclosure

17 requests about him, the deputy infracted him again for the same fabricated reason.  *Id.* at 29.

18 Deputy Nicholas's alleged actions would chill an inmate's First Amendment rights and if the

19 infractions were fabricated, as plaintiff alleges, they would not reasonably advance a legitimate

20 correctional goal.

21         Plaintiff alleges that Deputy Hovey began searching his cell and legal work a few days

22 after he filed a public disclosure request about her.  *Id.* at 31.  He also alleges that she read a

23 grievance he filed against her and the civil docket sheet in this case that lists her as a defendant,

1    and then she proceeded to infract him for having a piece of tape in his cell.  *Id.*  These allegations

2    are sufficient to state a retaliation claim against Deputy Hovey.

3        Plaintiff alleges that after he filed a public disclosure request about Deputy Machyo, the

4    deputy "tossed, and tore up" his cell.  *Id.* at 45.  Plaintiff allegedly asked Deputy Machyo if he

5    could speak with a sergeant about the condition of his cell, and Deputy Machyo "screamed at me

6    that if I wanted to file a lawsuit against him or file public disclosure about him, that he took it as

7    a threat and he had the right to protect himself from me."  *Id.* at 47.  Plaintiff states a retaliation

8    claim.

9        Plaintiff alleges that on April 5, 2018, Deputy Crew woke him up at 3:00 a.m. to ask if he

10    wanted his recreation time but then made him wait an hour before escorting him to the shower.

11    *Id.* at 59.  After his recreation time was over, plaintiff alleges, Deputy Crew escorted him back to

12    his cell with such a tight grip that it caused "extreme pain" and left bruises for over a week.  *Id.*

13    Plaintiff also alleges Deputy Crew "grabbed the handcuff chain and twisted it causing the cuffs

14    to click tighter and dig into my wrists."  *Id.*; *see also id.* at 61-65.  Plaintiff alleges that after he

15    was in his cell, her overheard Deputy Crew complaining to another deputy that plaintiff had

16    recently filed a grievance against him.  *Id.* at 61.  These allegations are sufficient to state a

17    retaliation claim against Deputy Crew.

18        Plaintiff alleges that Lieutenant Moll authorized deputies to wake him up in the middle of

19    the night to receive grievance and kite responses because he files so many of them.  *Id.* at 71.  He

20    alleges that Deputies Gross, Adepoju, Ohipeni, Ali, Hansen, Hart, Wilson, Freeman, and Crew,

21    then increased how often they were waking him up in the night, which interfered with his sleep.

22    *Id.* at 71-75.  Plaintiff also suggests that there was no legitimate penological purpose for waking

23    him up when he alleges that defendants woke him up in situations when other inmates were not

woken up.  *See id.* at 73.  These allegations are sufficient to state retaliations claims against these defendants.

        b.     *Inadequately pleaded retaliation claims*

Even liberally construing the SAC in plaintiff's favor, the following allegations fail to state claims upon which relief may be granted and should be dismissed with prejudice and without leave to amend.[2]

Plaintiff makes allegations against Deputy Shari Singh and Sergeant Roxanne Marler related to their handling of his alleged medical emergency in August 2017.  Dkt. 27-1 at 3-9. Plaintiff does not allege facts supporting the inference that Deputy Singh or Sergeant Marler acted because he engaged in protected conduct.

Plaintiff alleges that Deputy Nicholas searched his cell and wrongly infracted him after he questioned the deputy about having his criminal case file open in an area where others could read it.  *Id.* at 11-12.  Plaintiff's questioning of Deputy Nicholas was not protected conduct and therefore cannot serve as the basis for a retaliation claim.  Plaintiff also alleges that Deputy Nicholas interfered with his attempts to discuss his medication with a nurse and then served him with four major rule violations the following night.  *Id.* at 13-17.  Plaintiff's discussion with the nurse was not protected conduct, and moreover, the allegations do not plausibly support the inference that Deputy Nicholas acted because of plaintiff's protected conduct.  Plaintiff further alleges that Deputy Nicholas comes to his cell door to intimate him, but he does not plausibly allege facts suggesting that Deputy Nicholas does this *because* plaintiff filed grievances against him.  *Id.* at 21.

---

[2] Any other retaliation claims that are not specifically discussed in this section should be dismissed, as well.

REPORT AND RECOMMENDATION - 9

1    Plaintiff alleges that Deputy Singh wrongly infracted and locked him down after he

2    questioned her for not giving him his recreation time. *Id.* at 13. He does not plausibly allege that

3    Deputy Singh acted because he engaged in protected conduct.

4    Plaintiff alleges that Classification Specialist Wafstet, who copies his legal work for him,

5    has read his court filings and made comments indicating that she knows she is named as a

6    defendant in this lawsuit. *Id.* at 23. Plaintiff alleges that Classification Wafstet infracted him for

7    improperly using a legal envelope to mail letters to his power of attorney. *Id.* at 23-24. Plaintiff

8    alleges that Classification Wafstet told him she did not want to infract him but was told to do so

9    by Supervisor Parker and Classification Specialist Mitchell. *Id.* at 25. Plaintiff alleges that

10    Classification Mitchell held a hearing on the infraction and sanctioned him to lose two days good

11    conduct time. *Id.* Plaintiff alleges that Classification Mitchell was not impartial, and "I feel that

12    he used his position of authority to take my good conduct time in retaliation for some of the kites

13    that I had been sending to him." *Id.* These allegations do not amount to a retaliation claim

14    against Classification Wafstet, Supervisor Parker, or Classification Mitchell. Allegedly,

15    Classification Wafstet did not act because plaintiff engaged in protected conduct but because she

16    was told to infract him. Plaintiff does not allege facts supporting the inference that Supervisor

17    Parker directed Classification Wafstet to infract him because he engaged in protected conduct,

18    and his "feeling" that Classification Mitchell acted because he submitted kites is not enough to

19    raise the right to relief above the speculative level.

20    Plaintiff alleges that Deputies Ryakhovskiy and Gloor have been excessively searching

21    his cell and both told him that Deputy Nicholas was their "mentor." *Id.* at 31. Plaintiff,

22    however, fails to allege facts supporting the inference that Deputies Ryakhovskiy and Gloor

23    acted because plaintiff engaged in protected conduct.

1    Plaintiff alleges that Deputy Fletcher improperly infracted him.  *Id.* at 33.  But he does

2  not allege that she was motivated by him engaging in protected conduct.

3    Plaintiff alleges that Defendant Langdon, Classification Specialist Shedrick, and several

4  other defendants made decisions regarding where to house him in retaliation for events that

5  occurred at the jail 20 years ago.  *Id.* at 40-45.  Plaintiff fails to plausibly allege any retaliation

6  for engaging in protected conduct.

7    6.    *Accusations of being a snitch*

8    Plaintiff alleges that Deputies Machyo and Hatchell made remarks in front of other

9  inmates intimating that plaintiff is a snitch, and Deputy Chavez discussed plaintiff's keep

10  separates in front of other inmates.  Dkt. 27-1 at 35-39, 49-51.  In some circumstances, a prison

11  official may violate the Constitution by giving other inmates reason to believe that a particular

12  inmate is a jailhouse "snitch."  *See, e.g.*, *Glenn v. Cole*, No. 06-151, 2010 WL 2303028, at *2

13  (E.D. Cal. June 7, 2010) (prison officials who create a serious risk of irreparable harm may

14  violate the Eighth Amendment); *Threatt v. Arredia*, No. 05-97, 2008 WL 4376412 at *3 (W.D.

15  Mich. Sept. 22, 2008).  However, in order to recover under § 1983, a plaintiff must show he has

16  been threatened, assaulted, or otherwise suffered some actual, detrimental effect as the result of a

17  negative rumor spread by a correctional officer.  *See Vanlandingham v. Bojorquez*, 866 F.2d

18  1135, 1138 (9th Cir. 1989).  Plaintiff alleges that following the deputies' comments, he began to

19  suffer constant verbal abuse from other inmates, which made him "extremely depressed" and

20  "pushed him to the edge of wanting to hurt [himself]."  Dkt. 27-1 at 37, 51.  The Court concludes

21  that these allegations are sufficient to state claims against Deputies Machyo, Hatchell, and

22  Chavez.

23

7.    *Assault and battery*

Plaintiff alleges that on April 5, 2018, Deputy Crew was escorting him back to his cell

following his recreation time, and while his hands were handcuffed behind his back, the

following occurred:

> Deputy Crew #6145 tightened his grip on my arm to the point that it was causing
> me extreme pain.  I asked him to lighten up with his grip on my arm.  His
> response to this was to grip and squeeze my arm even harder and taking his free
> hand he grabbed the handcuff chain and twisted it causing the cuffs to click
> tighter and dig into my wrists.  As he was doing this he lifted up on them and
> forced me to go up on my toes.  He started pushing me harder and faster towards
> my cell and upon getting to the cell he pushed me inside and slammed the cell
> door.

Dkt. 27-1 at 59-61.  Plaintiff alleges that he had bruising on his arm that lasted over a week.  *Id.*

at 59-67.  Plaintiff alleges that Deputy Crew's actions amount to "assault."  *See id.* at 57.

Under Washington law, battery is a "harmful or offensive contact with a person, resulting

from an act intended to cause the plaintiff or a third person to suffer such a contact, or

apprehension that such a contact is imminent."  *McKinney v. City of Tukwila*, 103 Wash. App.

391, 408 (2000).  Assault is any act of such a nature that causes apprehension of battery.  *Id.*

Plaintiff's allegations are sufficient to state Washington law assault and battery claims against

Deputy Crew.  Plaintiff fails to state such claims against any other defendants.

8.    *Conditions of confinement*

Plaintiff complains about the conditions of his confinement.  The Eighth Amendment

prohibits the cruel and unusual punishment of prisoners, while the punishment of pretrial

detainees is prohibited by the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)

("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of

guilt in accordance with due process of law.").  The test for identifying unconstitutional

punishment at the pretrial stage of a criminal proceeding requires a court to examine "whether

1    there was an express intent to punish, or 'whether an alternative purpose to which [the

2    restriction] may rationally be connected is assignable for it, and whether it appears excessive in

3    relation to the alternative purposes assigned [to it].'" *Demery v. Arpaio*, 378 F.3d 1020, 1028

4    (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "For a particular governmental action to

5    constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,'

6    and (2) the purpose of the governmental action must be to punish the detainee." *Id.* at 1029.

7    Further, "to constitute punishment, the harm or disability caused by the government's action

8    must either significantly exceed, or be independent of, the inherent discomforts of confinement."

9    *Id.* at 1030.

10    "[M]aintaining institutional security and preserving internal order and discipline are

11    essential goals that may require limitation or retraction of the retained constitutional rights of

12    both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546; *see also Jones v. Blanas*,

13    393 F.3d 918, 932 (9th Cir. 2004) ("Legitimate, non-punitive government interests include

14    ensuring a detainee's presence at trial, maintaining jail security, and effective management of a

15    detention facility."). Moreover, corrections administrators "should be accorded wide-ranging

16    deference in the adoption and execution of policies and practices that in their judgment are

17    needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441

18    U.S. at 547.

19    The Constitution "does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452

20    U.S. 337, 349 (1981). Conditions of confinement "may be, and often are, restrictive and

21    harsh[.]" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Rhodes*, 452 U.S.

22    at 347). However, an institution must provide "food, clothing, shelter, sanitation, medical care,

23

1   and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986) (cited source

2   omitted), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

3        The Court considers conditions challenged by an inmate separately.  *See Wilson v. Seiter*,

4   501 U.S. 294, 304-05 (1991); *Hoptowit v. Ray*, 682 F.2d 1237, 1246-47 (9th Cir. 1982).  As

5   stated by the United States Supreme Court in relation to Eighth Amendment claims:

6          Some conditions of confinement may establish an Eighth Amendment violation
       "in combination" when each would not do so alone, but only when they have a

7          mutually enforcing effect that produces the deprivation of a single, identifiable
       human need such as food, warmth, or exercise – for example, a low cell

8          temperature at night combined with a failure to issue blankets.

9   *Wilson*, 501 U.S. at 305.  In other words, "[n]othing so amorphous as 'overall conditions' can

10  rise to the level of cruel and unusual punishment when no specific deprivation of a single human

11  need exists."  *Id.*  The Court should also consider the amount of time an inmate is subjected to a

12  condition.  *See Hutto v. Finney*, 437 U.S. 678, 685-87 (1978) ("[T]he length of confinement

13  cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy,

14  overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for

15  weeks or months."); *Hearns v. Terhune*, 413 F.3d 1036, 1042-43 (9th Cir. 2005) ("The

16  circumstances, nature, and duration of a deprivation of [] necessities must be considered in

17  determining whether a constitutional violation has occurred.") (quoting *Johnson v. Lewis*, 217

18  F.3d 726, 731 (9th Cir. 2000)).

19          a.    *Interrupted sleep*

20       Plaintiff alleges that Deputies Gross, Adepoju, Ohipeni, Hansen, Hart, Wilson, Freeman,

21  Crew, and Ali woke him up "almost nightly" to deliver mail, kites, or grievance responses.  Dkt.

22  27-1 at 71-77.  Although plaintiff's allegations suggest that these defendants intended to punish

23  him, the Court concludes that being woken up "almost nightly" does not rise to the level of a

harm that significantly exceeds the inherent discomforts of confinement.  Accordingly, plaintiff's

claims based on interrupted sleep should be dismissed with prejudice and without leave to

amend.

> b.   *Noise*

Plaintiff alleges that Deputy Adepoju watches horror movies between midnight and 6:00

a.m. with the office door open and the volume extremely high.  Dkt. 27-1 at 75.  Plaintiff alleges

that he found this very disturbing and it interrupted his sleep.  *Id.*  The Ninth Circuit has

recognized that "[p]ublic conceptions of decency inherent in the Eighth Amendment require that

[inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess

noise."  *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir.

1998) (quoted source omitted; bracket in original).  Plaintiff's allegations suggest that Deputy

Adepoju intended to punish inmates with excessive noise, but the Court cannot infer, based on

the facts alleged, that the harm significantly exceeded the inherent discomforts of confinement.

Plaintiff does not identify how often his sleep was interrupted by Deputy Adepoju, and without

such information, the Court cannot determine whether a Fourteenth Amendment violation has

been alleged.  Plaintiff was given an opportunity to amend this claim to provide such

information, but he failed to do so.  This claim should be dismissed with prejudice and without

leave to amend.

> c.   *Lighting*

Plaintiff alleges that bright lights are left on 24 hours a day in the segregation module,

where he has been housed since November 17, 2017, even though there is a dimmer option.  Dkt.

27-1 at 77.  He alleges that this causes him headaches and interferes with his sleep.  *Id.*  He

complained to Lieutenant Moll, who responded that the lights would remain on 24/7.  *Id.*  The

1    Constitution affords inmates the right to appropriate lighting.  *Hoptowit v. Spellman*, 753 F.3d

2    779, 783 (9th Cir. 1985) ("Adequate lighting is one of the fundamental attributes of 'adequate

3    shelter' required by the Eighth Amendment.").  The Ninth Circuit has found "no legitimate

4    penological justification for requiring [inmates] to suffer physical and psychological harm by

5    living in constant illumination."  *Keenan*, 83 F.3d at 1090-91 (quoted source omitted).  Given the

6    length of time plaintiff alleges he has been subjected to constant illumination, the Court

7    concludes that he states a Fourteenth Amendment claim against Lieutenant Moll.

8                    d.        *Temperature*

9            Plaintiff alleges that Deputy Blankenship leaves the outside recreation door open all

10   night, causing a "wind tunnel of cold air to blow through the module."  Dkt. 27-1 at 77.  He does

11   not allege how frequently this happens or how cold the module becomes.  "[T]he Constitution

12   does not mandate comfortable prisons."  *Rhodes*, 452 U.S. at 349.  Plaintiff's allegations are

13   insufficient to state a Fourteenth Amendment claim against Deputy Blankenship.  This claim

14   should be dismissed with prejudice and without leave to amend.

15                   e.        *Conditions of maximum status*

16           Plaintiff alleges that he received a memo regarding his maximum security classification

17   that set forth certain conditions of that status, including that every day he would be allowed to

18   access the telephones, take a shower, and access the book cart.  Dkt. 27-1 at 85.  Plaintiff alleges

19   that he is only allowed these activities every other day.  *Id.*  Plaintiff also alleges that some

20   deputies punish him by refusing to give him books that are left for him.  *Id.*

21           Defendants' alleged failure to comply with the provisions of the memo plaintiff received

22   does not amount to unconstitutional punishment, and neither does the frequency of his access to

23   showers, the telephone, and the book cart.  Likewise, even if the deputies intended to punish him

by refusing to give him books, this harm does not significantly exceed the inherent discomforts of confinement.  These claims should be dismissed with prejudice and without leave to amend.

### f.    *Ventilation*

Plaintiff alleges that Deputy Cross used his pepper spray five times against another inmate, and that every inmate in the unit, including plaintiff, was "left to suffer the issues of the pepper spray and nobody [was] allowed out to shower or obtain fresh air."  Dkt. 27-1 at 87. "[I]nadequate 'ventilation and air flow'" may be deemed unconstitutional where it "'undermines the health of inmates and the sanitation of the penitentiary.'"  *Keenan*, 83 F.3d at 1083 (quoting *Spellman*, 753 F.2d at 784).  Plaintiff fails to state a claim upon which relief may be granted because he alleges mere discomfort, not that the residual spray undermined his health or the sanitation of the jail.  This claim should be dismissed with prejudice and without leave to amend.

### g.    *Condition of showers*

Plaintiff alleges that the showers present a health hazard because there is a thick growth of fungus and bacteria, and even though he wears shower shoes, he contracted a severe case of athlete's foot, which took two months for him to get under control. Dkt. 27-1 at 89.  Plaintiff also alleges that there is a "horrible smell and stench" in the showers, and it is "hard to breathe" at times. *Id.*  Plaintiff alleges that he contacted Sergeant Ocawa, Sergeant Moody, Sergeant Lewis, Captain Stites, and Lieutenant Sundstrum regarding the problem before anyone addressed it, and the showers are still not cleaned properly. *Id.* at 87-89.  Severe or prolonged exposure of a prisoner to lack of sanitation can violated the Constitution. *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).  Liberally construing plaintiff's complaint, the Court concludes that plaintiff has sufficiently alleged a Constitutional violation regarding unsanitary conditions to warrant service of this claim.

h.    *Food service*

Plaintiff alleges that the inmate trustees and deputies, specifically Deputies Beers, Blankenship, and Perry, serve and touch food while wearing dirty gloves.  Dkt. 27-1 at 91-95. He alleges that he has "really bad OCD and . . . a real fear of germs and other issues." *Id.* at 95. Plaintiff also complains that the food is no longer hot when it is served.  *Id.*

The alleged use of dirty gloves does not amount to punishment within the meaning of the Eighth Amendment.  *See Demery*, 378 F.3d at 1029.  In addition, cold food, while perhaps unpleasant, does not violate the constitution.  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).  Plaintiff's claims regarding food service should be dismissed with prejudice and without leave to amend.

9.    *Access to counsel*

Plaintiff alleges that he has been denied access to his criminal defense attorney.  Dkt. 27-1 at 85.  Specifically, he alleges he only has access to a telephone during regular business hours once a week.  *Id.*  Plaintiff's allegations implicate the Sixth Amendment right to counsel.  "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  Plaintiff, however, fails to allege how he was harmed by the limitations on his access to his attorney, particularly given that he does not allege restrictions on face-to-face meetings or written communication.  His Sixth Amendment claim should be dismissed with prejudice and without leave to amend.

10.    *Medical issues*

Plaintiff complains about the medical care he has received.  Dkt. 27-1 at 5-9, 95-109.  A pretrial detainee's right to adequate medical care arises under the due process clause of the

1    Fourteenth Amendment.  *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018).  The

2    elements of such a claim are:

3        (i) the defendant made an intentional decision with respect to the conditions under
         which the plaintiff was confined; (ii) those conditions put the plaintiff at
4        substantial risk of suffering serious harm; (iii) the defendant did not take
         reasonable available measures to abate that risk, even though a reasonable official
5        in the circumstances would have appreciated the high degree of risk involved—
         making the consequences of the defendant's conduct obvious; and (iv) by not
6        taking such measures, the defendant caused the plaintiff's injuries.

7    *Id.* at 1125.  "With respect to the third element, the defendant's conduct must be objectively

8    unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular

9    case.'"  *Id.* (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)

10   (quoted sources omitted)).  A defendant's "mere lack of due care" is insufficient to state a

11   Fourteenth Amendment claim.  *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted source omitted)).

12   Thus, a plaintiff must "prove more than negligence but less than subjective intent—something

13   akin to reckless disregard."  *Id.* (quoting *Castro*, 833 F.3d at 1071).

14       Plaintiff alleges that when he was booked into the Snohomish County Jail, he disclosed to

15   the medical department that he gets blood clots in his arms and needs medication.  Dkt. 27-1 at

16   95-97.  He claims that it took over three weeks for him to be assessed and given the proper

17   medications.  *Id.* at 97.  Plaintiff, however, does not identify which defendant is responsible for

18   this delay, and he does not allege that he was harmed by the delay.  Therefore, he fails to state a

19   claim.

20       Plaintiff next alleges that the medical staff changed his medication doses on almost a

21   daily basis and it was so confusing that one night he was given the wrong dose, which caused

22   internal bleeding that took nearly a week to improve.  *Id.*  Plaintiff does not identify which

23   medical providers were involved in changing his doses, and therefore he fails to state a claim.

1   He also does not allege facts suggesting that the responsible medical providers acted more than

2   negligently.

3        Plaintiff alleges that he stopped taking his medication to allow his body to recover from

4   the internal bleeding, and when he asked to have his medication reinstated because his hands

5   were swelling and his arms were numb, it took over a month and 40 kites and grievances before

6   he was seen. *Id.* at 97-99.  He claims that Nurse Bellinger's responses to his kites bordered on

7   "total malpractice." *Id.* at 99.  He alleges that Dr. Andrews saw him on January 5, 2018, and

8   reinstated his medication. *Id.*  He alleges that the same problems started to happen with

9   providers changing his medication doses, and now Dr. Andrews is the only provider who is

10  allowed to make changes. *Id.*  Liberally construed, plaintiff's allegations are sufficient to state a

11  medical care claim against Nurse Bellinger because allegedly she intentionally delayed his

12  treatment, which put him at substantial risk of getting a serious blood clot; a reasonable nurse in

13  her situation would have appreciated the risk given plaintiff's medical history; and her lack of

14  action caused plaintiff to suffer swollen hands and numb arms for a month.  Plaintiff, however,

15  fails to identify any constitutionally deficient action by Dr. Andrews, who presumably is not

16  responsible for scheduling inmates to see him.

17       Plaintiff alleges that Nurse Delamerced brought him incorrect doses of his medication

18  and Nurse Miles brought him the wrong medications. *Id.* at 99-101.  Plaintiff's allegations

19  against these defendants, however, amount to "mere lack of due care," which is insufficient to

20  state a constitutional violation. *Gordon*, 888 F.3d at 1125 (quoted source omitted).

21       Plaintiff alleges that Nurse Bellinger told him to buy cream to fix his athlete's foot, but

22  the jail did not allow him to buy the medication.  Dkt. 27-1 at 103-05.  He alleges that it took

23  over 18 days and many kites and grievances to finally get the cream. *Id.*  Plaintiff fails to state a

1    constitutional medical care claim against Nurse Bellinger because athlete's foot is not a serious

2    medical need.  *See Vasquez v. Baca*, 323 Fed. Appx. 503, at *1 (9th Cir. 2009) (allegations

3    regarding treatment of athlete's foot did not implicate serious medical need).

4         Finally, plaintiff complains about the mental health care he has received.  *Id.* at 105-09.

5    He alleges that he has a long history of mental health issues, including several suicide attempts,

6    and that he currently suffers from paranoia, depression, suicidal thoughts, and other thoughts of

7    self-harm.  *Id.* at 109.  He alleges that he has filed numerous kites seeking mental health

8    assistance, and only two have been answered.  *Id.* at 105.  Plaintiff also alleges that MHP Hoover

9    overlooked a complaint that he might have suicidal thoughts due to long exposure to isolation,

10   and 13 days later MHP Merkel said she was going to put plaintiff on suicide watch.  *Id.*  Plaintiff

11   alleges that MHP Merkel and MHP Hoover have refused to come to the segregation and isolation

12   areas to see him and that they are not authorized to meet with him in the medical department.  *Id.*

13   Plaintiff has attempted to speak with MHP Taylor, who is the mental health director, about his

14   lack of access to mental health treatment but MHP Taylor has not responded to his requests

15   except for one time when he was in court.  *Id.* at 107.  Plaintiff alleges that on January 24, 2018,

16   he asked to speak with MHP Hoover because his grandfather had just passed away, but MHP

17   Hoover did not come to his cell door until February 2, 2018, and then only stayed for about five

18   minutes.  *Id.*

19        Plaintiff has sufficiently alleged medical care claims against MHP Hoover, Merkel, and

20   Taylor.  Liberally construed, plaintiff alleges that these defendants intentionally decided not to

21   respond to his numerous requests for mental health treatment, their failure put plaintiff at a

22   substantial risk of suffering serious harm, reasonable providers would have afforded plaintiff at

23

1    least some treatment for his ongoing mental health problems, and plaintiff's mental health

2    symptoms have worsened.

3           11.    *Religious rights*

4           Plaintiff alleges, "I am not Jewish but I do follow this religion to some degree.  Each year

5    I like to observe and participate in Passover," which he has been doing for the last ten years.

6    Dkt. 27-1 at 81.  He alleges that Supervisor Parker denied his request to participate in Passover.

7    *Id.*  He alleges that the Washington State Department of Corrections and the King County Jail

8    system have allowed him to participate in Passover and given him kosher meals.  *Id.*

9           a.    *RLUIPA*

10          The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides in

11   relevant part:

12         No government shall impose a substantial burden on the religious exercise of a
      person residing in or confined to an institution, . . . unless the government

13         demonstrates that imposition of the burden on that person . . . (1) is in furtherance
      of a compelling governmental interest; and (2) is the least restrictive means of

14         furthering that compelling governmental interest.

15   42 U.S.C. § 2000cc-1(a).  The statute defines "religious exercise" as "any exercise of religion,

16   whether or not compelled by, or central to, a system of religious belief."  § 2000cc-5(7)(A).

17          A plaintiff bears the initial burden under RLUIPA of demonstrating a religious exercise

18   impinged upon by the government, and that the government's conduct imposed a substantial

19   burden on that religious exercise.  *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 987 (9th Cir.

20   2008); *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005).  If plaintiff succeeds in

21   that prima facie showing, the burden shifts to the government to establish that the challenged

22   practice furthers a compelling governmental interest and is the least restrictive means of

23   furthering that compelling interest.  § 2000cc-2(b); *Green*, 513 F.3d at 986.

1    "RLUIPA does not define 'substantial burden.'" *San Jose Christian Coll. v. City of*

2    *Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).  However, the Ninth Circuit has explained

3    that a substantial burden on religious exercise "must be 'oppressive' to a 'significantly great'

4    extent[,]" imposing a "significantly great restriction or onus upon such exercise." *Id.*  The

5    government "must place more than an inconvenience on religious exercise." *Guru Nanak Sikh*

6    *Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks

7    omitted).  In considering a prisoner's challenge to institutional policies, the Court considers

8    whether the government's conduct "'denies [an important benefit] because of conduct mandated

9    by religious belief, thereby putting substantial pressure on an adherent to modify his behavior

10    and to violate his beliefs.'" *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124-25

11    (9th Cir. 2013) (quoting *Warsoldier*, 418 F.3d at 995 (alteration in original)).

12    Plaintiff's allegations are sufficient to survive screening.  He alleges that he follows some

13    aspects of Judaism, including observing Passover for the last ten years.  He alleges that

14    Supervisor Parker denied his request to participate in Passover, which arguably denied him an

15    important benefit.  He should be permitted to proceed with a RLUIPA claim against Supervisor

16    Parker.

17    b.    *First Amendment*

18    The First Amendment guarantees the right to the free exercise of religion.  However, the

19    free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in

20    order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v.*

21    *Shabazz*, 482 U.S. 342, 348 (1987).[3]

22

23    _____

[3] The Court applies the same standards for pretrial detainees and prisoners in considering First Amendment claims. *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1047-49 (9th Cir. 2002).

REPORT AND RECOMMENDATION - 23

1    To establish a free exercise claim, an inmate "must show the [defendants] burdened the

2    practice of [his] religion, by preventing him from engaging in conduct mandated by his faith,

3    without any justification reasonably related to legitimate penological interests." *Freeman v.*

4    *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled in part as stated below by Shakur*, 514 F.3d

5    at 884-85.  The Ninth Circuit has clarified that it examines free-exercise claims according to the

6    "sincerity" test rather than according to the "centrality test." *Shakur*, 514 F.3d at 885.

7    Therefore, a prisoner's religious concern implicates the Free Exercise Clause if it is (1)

8    "sincerely held" and (2) "rooted in religious belief," rather than in secular, philosophical

9    concerns.  *Id.* (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)).

10    "[I]ndirect coercion or penalties on the free exercise of religion, not just outright

11    prohibitions, are subject to scrutiny under the First Amendment." *Lyng v. Northwest Indian*

12    *Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988).  However, "[t]his does not and cannot

13    imply that incidental effects of government programs, which may make it more difficult to

14    practice certain religions but which have no tendency to coerce individuals into acting contrary

15    to their religious beliefs, require government to bring forward a compelling justification for its

16    otherwise lawful actions." *Id.*  As under RLUIPA, a free exercise violation occurs where a

17    burden imposes more than an inconvenience on religious exercise. *See Guru Nanak Sikh Soc'y*,

18    456 F.3d at 988 (relying on the Supreme Court's free exercise jurisprudence in defining a

19    substantial burden under RLUIPA); *Warsoldier*, 418 F.3d at 995-96 (same).

20    The Court concludes that plaintiff has sufficiently alleged that Supervisor Parker violated

21    his First Amendment right to the free exercise of religion.  Although plaintiff is not Jewish, his

22    allegations suggest that his observance of Passover stems from sincerely held religious beliefs.

23    He also alleges that Supervisor Parker prevented him from participating in Passover, and by

noting that other prison systems have allowed him to observe Passover, he suggests that there is no justification reasonably related to legitimate penological interests. Accordingly, he should be permitted to have this claim served.

12.    *Summary of claims in SAC that should be served*

To summarize, the following claims should be served: First Amendment violation against Supervisor Kimberly Parker for placing him on grievance restriction, Dkt. 27-1 at 52-53; retaliation claims, as described above, against Deputy Nicholas, *id.* at 19-21, 27-29, Deputy Hovey, *id.* at 31, Deputy Machyo, *id.* at 45-47, Deputy Crew, *id.* at 59-65, Lieutenant Moll, *id.* at 71, and Deputies Gross, Adepoju, Ohipeni, Hansen, Hart, Wilson, Freeman, and Crew, *id.* at 71-75; Fourteenth Amendment due process claims against Deputies Machyo, Hatchell, and Chaves for creating a serious risk of irreparable harm, *id.* at 35-39, 49-51; state law assault and battery claims against Deputy Crew, *id.* at 59-61; conditions of confinement claims against Lieutenant Moll regarding constant illumination, *id.* at 77, and against Sergeant Ocawa, Sergeant Moody, Sergeant Lewis, Captain Stites, and Lieutenant Sundstrum, for unsanitary shower conditions, *id.* at 87-89; constitutionally deficient medical care claims against Nurse Bellinger, MHP Taylor, MHP Hoover, and MHP Merkel, *id.* at 99, 105-09; and RLUIPA and First Amendment free exercise claims against Supervisor Parker, *id.* at 81. All other claims and defendants should be dismissed with prejudice and without leave to amend.

B.    <u>Motion to supplement second amended complaint</u>

On April 30, 2018, plaintiff filed a second §1983 action against many of the defendants named in this case, which was docketed as *Brennan v. Mitchell*, No. C18-624-RAJ-BAT (W.D. Wash.). The Honorable Brian A. Tsuchida recommended that the case be dismissed as

duplicative of this action.  *Id.* at Dkt. 16.  The Honorable Richard A. Jones adopted that

recommendation and dismissed the case on June 12, 2018.  *Id.* at Dkt. 20.

On June 5, 2018, while Judge Tsuchida's Report and Recommendation was still pending,

plaintiff filed a motion to supplement in this action.  Dkt. 39.  He asks that the Court transfer all

of the information he filed in Case No. C18-624-RAJ-BAT into this case.  *Id.* at 2.  He also seeks

to supplement his SAC with allegations and claims that were not included in his SAC.  *Id.*

1.    *Legal standard for motions to supplement*

"The legal standard for granting or denying a motion to supplement under [Federal Rule

of Civil Procedure] 15(d) is the same as for amending one under 15(a)."  *Lyon v. U.S. Imm. &*

*Customs Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015).  The five factors commonly used

to evaluate such motions are: (1) undue delay, (2) bad faith or dilatory motive on the part of the

movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party,

and (5) futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Absent prejudice

or a "strong showing" of any other *Foman* factor, there is a presumption in favor of granting

leave to supplement.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.

2003).

In this case, there is no suggestion of undue delay, bad faith, repeated failure of previous

amendments, or undue prejudice.  Thus the primary question before the Court is whether

allowing the supplement would be futile because the factual allegations do not state a claim upon

which relief may be granted.

2.    *New factual allegations*

Plaintiff seeks to supplement his SAC with the following factual allegations.  On March

27, 2018, plaintiff was in a maximum security unit, and Inmate Cooper was house in a nearby

1    cell. Dkt. 39 at 2-3. Plaintiff saw Inmate Cooper spit on and threaten to kill a deputy, and he

2    wrote a statement regarding what he saw. *Id.* As a result, felony charges were brought against

3    Inmate Cooper. *Id.* A deputy (plaintiff does not specify who) informed Inmate Cooper that

4    plaintiff had written a statement. *Id.* Inmate Cooper started to verbally threaten to rape and kill

5    plaintiff, and these threats went on for 5-6 hours each day and caused plaintiff "mental anguish,"

6    "emotional trauma," and made him think of harming himself. *Id.* at 3-4.

7        On April 7, 2018, plaintiff informed Classification Specialists Mitchell and Wafstet of the

8    threats, but they did nothing. *Id.* On April 8, 2018, plaintiff informed MHP Hoover of the

9    threats, but MHP Hoover claimed there was nothing he could do. *Id.* The following staff

10   members heard Inmate Cooper make "racial comments" and "some witnessed his daily threats to

11   rape and kill": Deputies Spaetig, Hansen, Ryalchovskiy, Fletcher, Hovey, Bloss Singh, Gloor,

12   Beers, Cross, Blankenship, Crew, Hart, Haugstad, Henry, and Garka; and Sargent Johnston. *Id.*

13   at 7; Dkt. 39-1 at 41.

14       On April 18, 2018, Deputies Garka and Ray overheard Inmate Cooper's remarks and

15   asked plaintiff to write a statement. Dkt. 39 at 7. The deputies gave plaintiff's statement to

16   Sargent Johnston, who had Inmate Cooper moved to a different module in the jail. *Id.* Sergeant

17   Johnston returned to interview plaintiff about the allegation of sexual harassment, and formal

18   felony charges against Inmate Cooper were referred to the prosecutor's office on April 19, 2018.

19   *Id.* Plaintiff's sexual harassment complaint was referred to Supervisor Parker, who

20   "immediately" closed the complaint as "unfounded." *Id.*

21       3.    *Failure-to-protect claim*

22       Officials have a duty "to take reasonable measures to guarantee the safety" of those in

23   their care, which has been interpreted to include a duty to provide for their protection. *Labatad*

*v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v.*

*Brennan*, 511 U.S. 825, 832-33 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.

2005)).  To state a violation of this duty, a pretrial detainee must allege:

> (1) The defendant made an intentional decision with respect to the conditions
> under which the plaintiff was confined; (2) Those conditions put the plaintiff at
> substantial risk of suffering serious harm; (3) The defendant did not take
> reasonable available measures to abate that risk, even though a reasonable officer
> in the circumstances would have appreciated the high degree of risk involved —
> making the consequences of the defendant's conduct obvious; and (4) By not
> taking such measures, the defendant caused the plaintiff's injuries. With respect to
> the third element, the defendant's conduct must be objectively unreasonable, a
> test that will necessarily turn on the facts and circumstances of each particular
> case.

*Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016).

As an initial matter, plaintiff fails to state a claim against Deputies Spaetig, Hansen,

Ryalchovskiy, Fletcher, Hovey, Bloss Singh, Gloor, Beers, Cross, Blankenship, Crew, Hart,

Haugstad, Henry, and Garka; and Sargent Johnston.  These defendants allegedly heard Inmate

Cooper make "racial comments" toward plaintiff, but even liberally construing plaintiff's

allegations, a reasonable officer would not have appreciated that "racial comments" created a

high degree of risk to plaintiff.  *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997),

*abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (because

"verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under" §

1983, inmate failed to raise a genuine issue as to a constitutional violation on the basis of the

alleged abusive epithets); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended*, 135

F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to

implicate Eighth Amendment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)

(verbal harassment or abuse is not sufficient to state a § 1983 claim); *Gaut v. Sunn*, 810 F.2d

923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong).  Plaintiff also

REPORT AND RECOMMENDATION - 28

1   alleges that "some" of these defendants heard Inmate Cooper threaten to rape and kill plaintiff on

2   a daily basis; however, plaintiff's failure to specifically identify the defendants is fatal to these

3   claims.

4           The Court, however, concludes that plaintiff sufficiently alleges failure-to-protect claims

5   against Classification Mitchell, Classification Wafstet, and MHP Hoover.  Liberally construed,

6   plaintiff alleges that he informed these defendants that Inmate Cooper spent five to six hours a

7   day threatening to rape and kill him, that the threats had been ongoing for over ten days, and that

8   he had been suffering emotional harm.  Although, as noted above, verbal harassment generally

9   does not violate the Constitution, given the intensity and frequency of the alleged threats, the

10  Court concludes that, at least for purposes of screening, plaintiff alleges conditions that put him

11  at substantial risk of suffering serious harm and that a reasonable officer in the circumstances

12  would have appreciated the high degree of risk involved.  Indeed, plaintiff alleges that when

13  Deputies Garka and Ray overheard Inmate Cooper's threats, they quickly acted to have plaintiff

14  write up a statement and to give the statement to a supervisor, who immediately transferred

15  Inmate Cooper away from plaintiff.  These claims should be served.

16          4.      *Prison Rape Elimination Act of 2003*

17          Plaintiff seeks to hold defendants liable under Prison Rape Elimination Act of 2003

18  ("PREA"), 42 U.S.C. § 15601.  PREA, however, does not create a private right of action.  *E.g.*,

19  *Marlett v. Harrington*, No. 15-1382, 2017 WL 6123613, at *4 (E.D. Cal. Oct. 16, 2015); *Bell v.*

20  *Cnty. of L.A.*, No. 07-8187, 2008 WL 4375768, at *6 (C.D. Cal. Aug. 25, 2008); *Inscoe v. Yates*,

21  No. 08-1588, 2009 WL 3617810, at *3 (E.D. Cal. Oct. 28, 2009).  Rather, PREA was enacted to

22  study the problem of prison rape.  *Pirtle v. Hickman*, No. 05-146, 2005 WL 3359731, at *1 (D.

23  Idaho Dec. 9, 2005).  Nothing in the Act suggests that it created a private right of action,

1   enforceable under § 1983.  *See Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (statutory

2   provision gives rise to federal right enforceable under § 1983 where the statute "unambiguously

3   imposed a binding obligation on the States" by using "mandatory, rather than precatory, terms").

4   The Act in itself contains no private right of action, nor does it create a right enforceable under §

5   1983.  Plaintiff thus fails to state a federal § 1983 claim based on a violation of PREA.

6          5.      *Summary of recommendations with respect to motion to supplement*

7          The Court recommends that the motion to supplement be granted in part and denied in

8   part.  Plaintiff should be permitted to supplement his SAC with the failure-to-protect claims

9   against Classification Mitchell, Classification Wafstet, and MHP Hoover, and these defendants

10  should be served.  His motion should be denied in all other respects, including his request to

11  have the entire docket in Case No. 18-624-RAJ-BAT transferred into this case.

12                         IV.      <u>CONCLUSION</u>

13         The Court recommends that some of the claims in plaintiff's SAC be served and others

14  be dismissed.  Specifically, the following claims should be served:

15  - First Amendment violation against Supervisor Kimberly Parker for placing plaintiff

16      on grievance restriction.  Dkt. 27-1 at 52-53.

17  - Retaliation claims, as described above, against Deputy Nicholas, *id.* at 19-21, 27-29,

18      Deputy Hovey, *id.* at 31, Deputy Machyo, *id.* at 45-47, Deputy Crew, *id.* at 59-65,

19      Lieutenant Moll, *id.* at 71, and Deputies Gross, Adepoju, Ohipeni, Hansen, Hart,

20      Wilson, Freeman, and Crew, *id.* at 71-75.

21  - Fourteenth Amendment due process claims against Deputies Machyo, Hatchell, and

22      Chaves for creating a serious risk of irreparable harm.  *Id.* at 35-39, 49-51.

23  - State law assault and battery claims against Deputy Crew.  *Id.* at 59-61.

REPORT AND RECOMMENDATION - 30

- Conditions of confinement claims against Lieutenant Moll for constant illumination, *id.* at 77, and against Sergeants Ocawa, Moody, and Lewis; Captain Stites; and Lieutenant Sundstrum, for unsanitary shower conditions, *id.* at 87-89.

- Constitutionally deficient medical care claims against Nurse Bellinger, MHP Taylor, MHP Hoover, and MHP Merkel. *Id.* at 99, 105-09.

- RLUIPA and First Amendment free exercise claims against Supervisor Parker. *Id.* at 81.

All other claims and defendants, whether or not they were specifically discussed in this Report and Recommendation, should be dismissed with prejudice and without leave to amend.

The Court further recommends that plaintiff's motion to supplement, Dkt. 39, be GRANTED in part and DENIED in part. Plaintiff should be permitted to supplement his SAC with his failure-to-protect claims against Classification Mitchell, Classification Wafstet, and MHP Hoover. The motion should be denied in all other respects.

A proposed order that details these recommendations accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **July 6, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 6, 2018**.

1    This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

2    seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3    assigned District Judge acts on this Report and Recommendation.

4    Dated this 14th day of June, 2018.

5

6    _____

7    JAMES P. DONOHUE
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 32