UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RONALD BRENNAN, JR.,

                        Plaintiff,

        v.

ANTHONY ASTON, et al.,

                        Defendants.

Case No. 17-cv-1928-JCC-MLP

REPORT AND RECOMMENDATION

## I.      INTRODUCTION

Plaintiff, a state prisoner who is proceeding *pro se* and *in forma pauperis*, initiated this 42 U.S.C. § 1983 civil rights action while he was a pretrial detainee at the Snohomish County Jail (the "Jail"). He brings numerous claims against 26 Jail employees. Currently before the Court are two summary judgment motions filed by three of the defendants, Deputies John Hatchell (dkt. # 192), Collins Machyo, and Elias Chavez (dkt. # 193) (collectively, "Defendants"). Plaintiff alleges a First Amendment retaliation claim against Deputy Machyo and Fourteenth Amendment failure to protect claims against all three deputies. Defendants argue that they are entitled to qualified immunity and that Plaintiff cannot meet the Prison Litigation Reform Act's physical injury requirement.

Having considered the parties' submissions[1] and the governing law, the Court recommends that Deputy Hatchell's motion for summary judgment be GRANTED and that Deputy Machyo and Chavez's motion for summary judgment be GRANTED in part and DENIED in part, as explained below.

## II.    BACKGROUND

### A.  Facts

Plaintiff's claims against Defendants stem from events that occurred on three separate occasions: December 7, 2017, January 5, 2018, and January 26, 2018. The Court sets forth the parties' facts, included those that are disputed, below.[2]

### 1.    *December 7, 2017 – Fourteenth Amendment Claim against Deputy Chavez*

On December 7, 2017, Deputy Chavez was tasked with escorting Plaintiff from his cell to another location. (Dkt. # 194 at ¶ 5.) While Deputy Chavez and Plaintiff were waiting in a room with at least one other inmate, Deputy Chavez asked Plaintiff why he had so many keep-separate orders. (*Id.* at ¶ 11; Dkt. # 27-1 at 49; Dkt. # 27-3 at 51.) Deputy Chavez did not disclose any information about the identity of the inmates Plaintiff was separated from or why they had to remain separate. (Dkt. # 194 at ¶¶ 6, 9, 13.) Plaintiff responded that it was none of Deputy Chavez's business. (*Id.* at ¶ 12; Dkt. # 27-3 at 51.) Plaintiff filed a grievance regarding the interaction, and the Jail concluded that Deputy Chavez should not have asked this question in

---

[1] In addition to Defendants' motions for summary judgment and supporting evidence (dkt. ## 192-196), the Court has reviewed Plaintiff's verified second amended complaint and relevant exhibits (dkt. # 27), Plaintiff's "Evidence against Summary Judgment" (dkt. # 217), Plaintiff's first response brief (dkt. # 221), Defendants' first reply briefs (dkt. ## 222, 223), Plaintiff's additional response brief regarding Deputy Hatchell (dkt. # 228) and the documents cited therein (dkt. ## 133-134), and Deputy Hatchell's additional reply brief (dkt. # 230).

[2] Because Plaintiff's second amended complaint is verified (*see* dkt. # 27 at 4), it "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

front of other inmates. (Dkt. # 27-3 at 55.) Plaintiff alleges generally that after this incident, other inmates "harassed and threatened" him. (Dkt. # 27-1 at 51.)

> 2.      *January 5, 2018 – Fourteenth Amendment Claims against Deputies Machyo and Hatchell*

On January 5, 2018, Plaintiff was housed in the 4-North housing module, which is a maximum-security unit where inmates are assigned to single-cells. (*Id.* at 35; *see also* Dkt. # 195 at ¶¶ 5-6.) Inmates in 4-North are allowed out of their cells one at a time, during staggered times, and do not move about freely to interact with each other. (Dkt. # 194 at ¶ 7.) According to Plaintiff, inmates can communicate with each other verbally, and "when a person is talking outside the cell to an inmate inside the cell everything that is being said is heard by all inmates in the cell block." (Dkt. # 27-1 at 35, 37.)

At approximately 9:00 a.m. that morning, Deputy Machyo came to Plaintiff's cell door to find out whether he intended to attend a professional visit that was scheduled that day. (Dkt. # 195 at ¶¶ 7-11.) Professional visits may be scheduled by attorneys, law enforcement officers, social workers, and members of other approved professions. (*Id.* at ¶ 7.) Deputy Machyo's practice and training with respect to professional visits is to inform an inmate that he has a professional visit scheduled, ask him if he would accept the appointment, and if he does, coordinate with the custody deputy who will escort the inmate to the area of the Jail where the professional visits are conducted. (*Id.* at ¶ 8.)

The parties dispute what was said during their interaction. Deputy Machyo states that he walked to Plaintiff's cell and, speaking in a normal tone and volume through the cell communication port, informed Plaintiff of the professional visit and asked him if he wanted to attend. (*Id.* at ¶ 11.) According to Deputy Machyo, Plaintiff asked who was there to visit him, and the deputy responded that he did not exactly know. (*Id.* at ¶ 12.) Plaintiff, on the other hand,

1    states that Deputy Machyo loudly asked, "Brennan you have a [professional visit] with two

2    detectives, do you want to go?" (Dkt. # 27-1 at 35.) Plaintiff accepted the visit. (Dkt. # 195 at ¶

3    13.)

4            Later that morning, a deputy escorted Plaintiff from 4-North to the professional visiting

5    area where they met Deputy Hatchell, who had been tasked with escorting Plaintiff to his

6    meeting with the detectives. (Dkt. # 192-1 at ¶ 2.) Plaintiff states that Deputy Hatchell loudly

7    stated in front of seven or eight inmates, "Brennan[,] you down and around the corner so nobody

8    sees you talking with the police." (Dkt. # 27-1 at 39.) Deputy Hatchell does not remember the

9    exact words he used, but states that they were to the effect of, "I'm going to put you down here,

10   so people don't see who you're talking to." (Dkt. # 192-1 at ¶ 2.) Deputy Hatchell states that he

11   intended this statement to be heard only by Plaintiff, and while he admits that others could have

12   heard it, he does not believe anyone did. (*Id.*)

13           Plaintiff reported Deputy Hatchell's statement to the detective with whom he met, Tim

14   Renihan, who filed a formal complaint. (Dkt. # 27-1 at 39, 45.) According to the Snohomish

15   County Sheriff's Office Personnel Complaint Form, "Det. Renihan stated he was very upset

16   about [Deputy Hatchell's] comment because it puts inmate Brennan in a dangerous position and

17   could jeopardy [sic] the case he is helping with." (Dkt. # 217 at 3.) Ultimately, Deputy Hatchell

18   received a written reprimand, which stated, "It is expected in the future that you will take the

19   proper steps and precautions to not place an inmate's safety in jeopardy . . . ." (*Id.* at 4-5.)

20           When Plaintiff returned to his cell in 4-North after meeting with Detective Renihan, he

21   states, "I was tormented and harassed by inmates who were residing there. I was called a Snitch,

22   Rat[,] Informant and I was also threatened by inmates that if I was to go to court at the same time

23   as them, then it would be a fight." (Dkt. # 27-1 at 37.) He claims, "I was subject to being yelled

at by other inmates that I was a snitch and that I needed to kite myself out of the unit." (*Id.*) He

stated, "The constant verbal abuse I suffered by these inmates was a major setback in my life. I

became extremely depressed and at times with the constant yelling about me pushed me to the

edge of wanting to hurt myself." (*Id.*)

### 3. *January 26, 2018 – Retaliation Claim against Deputy Machyo*

On January 26, 2018, Deputy Machyo searched Plaintiff's cell while he was out at a

professional visit. (Dkt. # 27-1 at 45; Dkt. # 195 at ¶ 17.) Plaintiff states that Deputy Machyo had

"tossed, and tore up" his cell, spreading all his legal work over the desk, bed, and floor. (Dkt. #

27-1 at 45.) According to Deputy Machyo, he searched the cell in accordance with Jail policy.

(Dkt. # 195 at ¶ 16.) Jail policy directs that inmates housed in 4-North will have their cells

searched whenever they leave their cells. (*Id.* at ¶ 15.) Deputy Machyo states that when he

conducts a cell search, he searches all areas of the cell and the limited items inmates are allowed;

when he searches paperwork, he pat-searches the material to ensure contraband is not hidden

within it but does not read the material or content. (*Id.* at ¶ 17.)

Plaintiff also states that later that day, Deputy Machyo became very irate and "came back

to the cell door and screamed at me that if I wanted to file a lawsuit against him or file public

disclosure about him, that he took it as a threat and he had the right to protect himself from me."

(Dkt. # 27-1 at 47.) Plaintiff claims Deputy Machyo retaliated against him after he filed a public

disclosure request about the deputy. (*Id.*) Deputy Machyo attests that he did not know Plaintiff

had submitted public records requests about him to Snohomish County prior to January 5 and 26,

2018, and he did not learn Plaintiff had filed a lawsuit against him until August 2018. (Dkt. #

195 at ¶¶ 18-19.) According to Deputy Machyo, "All of my interactions with Plaintiff have been

1  routine, work related actions, in my role as a Custody Deputy with [the Jail], in accordance with

2  my training, experience and [Jail] policy." (*Id.* at ¶ 20.)

3  **B.  Procedural History**

4  Plaintiff initiated this action *pro se* in December 2017, seeking to bring claims against 53

5  defendants. (Dkt. # 1.) Upon screening, the Honorable James P. Donohue declined to serve the

6  complaint and granted Plaintiff leave to amend. (Dkt. # 15.) Judge Donohue declined to serve

7  Plaintiff's amended complaint, as well. (Dkt. ## 18, 25.) After Plaintiff filed a verified second

8  amended complaint ("SAC"), Judge Donohue issued a Report and Recommendation,

9  recommending that some claims and defendants be dismissed and that others be allowed to go

10  forward. (Dkt. ## 27, 39, 41.) The Honorable John C. Coughenour adopted the Report and

11  Recommendation. (Dkt. # 44.) Judge Donohue directed that the SAC be served on the remaining

12  26 defendants, and the defendants timely answered. (Dkt. ## 49, 101, 102.) Judge Donohue

13  subsequently set discovery and dispositive motions deadlines. (Dkt. # 103.)

14  On February 25, 2019, Defendants filed the motions for summary judgment that are

15  currently before the Court. (Dkt. ## 192, 193.) The motions were noted for March 22, 2019. On

16  February 27, 2019, Plaintiff informed the Court that he had been transferred from the custody of

17  the Washington State Department of Corrections ("DOC") to the King County Jail.[3] (Dkt. #

18  198.) On March 11, 2019, Plaintiff filed a motion to file an over-length response brief, which the

19  Court denied, re-noting the summary judgment motions to allow time for Plaintiff to file his

20  response briefs. (Dkt. ## 211, 213.) On April 5, 2019, the Court again re-noted the summary

21  judgment motions for June 7, 2019, because Plaintiff was having difficulty accessing the law

22  library at the King County Jail. (Dkt. # 218.) On May 30, 2019, the Court received another

23

---

[3] On March 1, 2019, this case was reassigned to the undersigned. (Dkt. # 209.)

1  motion from Plaintiff requesting an extension of all deadlines because he had been unable to

2  access his legal work and the law library. (Dkt. # 220.) On June 3, 2019, Plaintiff filed a timely

3  response to the motions for summary judgment, which he had created by cutting and pasting

4  portions of a document that he had already filed with the Court. (Dkt. # 221; *see also* Dkt. #

5  109.) Defendants thereafter filed their reply briefs. (Dkt. ## 222, 223.)

6      After Plaintiff's motion for extension of time became ripe, the Court granted it in part.

7  (Dkt. # 227.) The Court extended the discovery deadline to November 18, 2019, and the

8  dispositive motions deadline to December 18, 2019, to allow sufficient time for Plaintiff to be

9  returned to DOC custody and gain access to all of his legal materials. (*Id.* at 4.) The Court,

10 however, declined to significantly delay ruling on the pending motions for summary judgment,

11 explaining that it appeared Plaintiff would be able to adequately respond to Defendants'

12 arguments by conducting legal research during his 4-hours a week at the King County Jail's legal

13 work station and drafting a declaration based on personal knowledge. (*Id.* at 3.) The Court re-

14 noted the summary judgment motions for a final time for July 26, 2019. (*Id.* at 4.) Plaintiff

15 timely filed a supplemental response regarding his claim against Deputy Hatchell, asking the

16 Court to consider previously stricken documents (dkt. ## 133, 134[4]), but he did not submit a

17 declaration (dkt. # 228). Deputy Hatchell then filed a supplemental reply. (Dkt. # 230.)

18

19

20

21

22

23

---

[4] Docket # 133 is 247 pages and Docket # 134 is 253 pages. In his supplemental response brief, Plaintiff specifically references "Rebuttal Document # 6," which includes copies of Plaintiff's grievances and service kites related to Defendants, Plaintiff's additional explanations of these documents, and a letter from the Snohomish County Sheriff's Office regarding one of Plaintiff's public records requests. (Dkt. # 133-1 at 47-66.) The Court has scanned the remainder of Docket ## 133 and 134, and they do not appear to be directly related to his claims against Defendants.

REPORT AND RECOMMENDATION - 7

## III.    LEGAL STANDARDS

### A.  Summary Judgment Standard

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the nonmovant lacks the quantum evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit

1  under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute.

2  *Id.* at 252.

3        In ruling on a motion for summary judgment, the Court must draw all reasonable

4  inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and

5  may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248; *see*

6  *also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (district court cannot

7  disregard evidence at the summary judgment stage solely based on its self-serving nature, even if

8  it is uncorroborated, unless it "states only conclusions and not facts that would be admissible in

9  evidence" (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir.

10  2002) (district court properly disregarded the declaration that included facts beyond the

11  declarant's personal knowledge and did not indicate how she knew the facts to be true); *F.T.C. v.*

12  *Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving

13  affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine

14  issue of material fact.")).

15        A verified complaint, like Plaintiff's, "may be treated as an affidavit to oppose summary

16  judgment to the extent it is based on personal knowledge and sets forth specific facts admissible

17  in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations

18  omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203

19  F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). But allegations that are based merely on

20  Plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture

21  and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.

22  2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

23

1

### B.  Section 1983 Claims

To sustain a § 1983 civil rights claim, Plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, Plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

### C.  Qualified Immunity

The doctrine of qualified immunity protects government officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent prongs: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. Cnty. of L.A.*, 797 F.3d 654, 663 (9th Cir. 2015) (citing *Pearson*, 555 U.S. at 232). Either prong may be considered first. *Id.* (citing *Pearson*, 555 U.S. at 236).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## IV.     DISCUSSION

Defendants argue that they are entitled to summary judgment based on qualified immunity and that the Prison Litigation Reform Act ("PLRA") precludes him from recovering compensatory damages for emotional or mental suffering because he did not suffer a physical injury. (*See* Dkt. ## 192, 193.) Viewing the evidence in the light most favorable to Plaintiff, the Court concludes (1) no rational jury could conclude that Deputy Machyo violated Plaintiff's First Amendment rights, (2) disputed issues of material fact preclude summary judgment based on qualified immunity for Plaintiff's Fourteenth Amendment claim against Deputy Machyo, (3) no rational jury could conclude that Deputies Hatchell and Chavez violated Plaintiff's Fourteenth Amendment rights, and (4) Plaintiff is not entitled to seek compensatory damages for his Fourteenth Amendment claim against Deputy Machyo, but he may seek nominal damages.

### A.  Retaliation Claim Against Deputy Machyo

The First Amendment protects prisoners' right to file grievances and pursue civil rights litigation in federal court without retaliation. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Silva v. DiVittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff claims that Deputy Machyo retaliated against him by improperly searching his cell because he had filed a public disclosure request about the deputy. (Dkt. # 27-1 at 45, 47.) Plaintiff states that several hours after searching his cell, Deputy Machyo became angry, "came

back to the cell door and screamed at me that if I wanted to file a lawsuit against him or file

public disclosure about him, that he took it as a threat and he had the right to protect himself

from me." (*Id.* at 47.)

Deputy Machyo argues that the is entitled to summary judgment on this claim because

submitting public records requests under the Washington State Public Records Act ("PRA") is

not a constitutionally protected activity. (Dkt. # 193 at 10-12.) The Supreme Court has held that

there is no constitutional right of access to government information. *See, e.g.*, *McBurney v.

Young*, 569 U.S. 221, 232 (2013) ("This Court has repeatedly made clear that there is no

constitutional right to obtain all the information provided by FOIA laws."); *Houchins v. KQED*,

438 U.S. 1, 15 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates

a right of access to government information or sources of information within the government's

control."). But neither the Supreme Court nor Ninth Circuit have addressed the question

presented here, which is whether the First Amendment protects the right to *request* public

records. In an unpublished decision, the Tenth Circuit has held that requesting public records is

not a protected activity. *Allen v. Lang*, 738 Fed. Appx. 934, 938-39 (10th Cir. 2018). District

Courts around the country are split. *Compare, e.g.*, *Entler v. McKenna*, No. 11-5081, 2011 WL

4368367, at * 4 (W.D. Wash. July 19, 2011), *R & R adopted*, 2011 WL 4368729 (W.D. Wash.

Sept. 19, 2011), *aff'd*, 487 Fed. Appx. 417 (9th Cir. 2012) ("While Plaintiffs have a First

Amendment right to pursue litigation free from retaliation, they have no First Amendment right

to request public records under the PRA . . . ."); *Rodriguez v. Serna*, No. 17-1147, 2019 WL

2340958, at *6 (D.N.M. June 3, 2019) ("The Court concludes that requesting public records is

not a protected activity under the First Amendment . . . ."); *Werner v. Therien*, No. 99-12497,

2005 WL 1000010, at *8 (D. Mass. Mar. 31, 2005) (holding that prisoner's public records

1    request was not a protected activity for purposes of a First Amendment retaliation claim), *with*

2    *Handy-Clay v. City of Memphis*, No. 10-2927, 2013 WL 5305239, at * 13 (W.D. Tenn. Sept. 19,

3    2013) (rejecting claim that requesting public records was not a protected activity and collecting

4    cases holding "that the act of requesting public records is a speech act protected by the First

5    Amendment").[5]

6         Given that there is no binding authority on this issue, the Court follows the judges in this

7    District who have already concluded that there is no First Amendment right to request public

8    records. *See Entler*, 2011 WL 4368367, at * 4. Because Plaintiff does not have a First

9    Amendment right to request public records, his retaliation claim against Deputy Machyo fails as

10    a matter of law. Accordingly, summary judgment must be granted in Deputy Machyo's favor on

11    this claim.

12    **B.  Fourteenth Amendment Failure to Protect Claims Against Defendants**

13         Pretrial detainees are protected by the Fourteenth Amendment's due process clause.

14    *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc) (citing *Bell v. Wolfish*,

15    441 U.S. 520, 535 (1979)). A pretrial detainee alleging a failure to protect claim must establish

16    that the defendant was deliberately indifferent under the following standard:

17

18

19

20

21

22

23

---

[5] The court in *Handy-Clay* collected the following cases: *McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 39-40 (S.D.N.Y. 2011) ("Here, McAvey's FOIL request to the Goshen police department constituted citizen speech" and "McAvey engaged in the speech at issue here (the FOIL request) in her role as a citizen, as opposed to her role as a public employee, and that speech is protected against retaliation by the First Amendment."); *Kerr v. City & Cnty. of San Francisco*, No. 10-5733, 2012 WL 3877752 (N.D. Cal. Sept. 6, 2012) ("As to whether the requests were expressive speech, under the circumstances presented here, a reasonable factfinder could infer Dr. Rivero and Plaintiff intended to convey a message that they suspected that the Gift Fund was being managed and used improperly."); *Benkoski v. Wasilewski*, No. 07-0197, 2008 WL 4414741 (M.D. Pa. Sept. 24, 2008) *aff'd*, 584 F.3d 1102 (3d Cir. 2009) ("None of the Defendants dispute that the Plaintiffs' actions are the type typically afforded protection under the First Amendment and the Court agrees that Plaintiffs' attempt to obtain public records as part of their investigation constituted protected activity."); *Moore v. Gabriel*, No. 05-31L, 2007 WL 917291 (M.D. Ga. Mar. 22, 2007) ("The Court has found that the Frazier memorandum and Plaintiff's Open Records Act requests satisfy the requirements for protected speech. The speech clearly relates to the potential abuse and mismanagement of ABHS resources by agency officials.").

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. The Ninth Circuit has further explained, "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.'" *Id.* (quoted source omitted). The plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

The Ninth Circuit has held that allegations that prison officials called a prisoner a "snitch" in the presence of other inmates may violate an inmate's right to be free from harm.[6] *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989); *see also Miller v. Williams*, 976 F.2d 737 (9th Cir. 1992) (unpublished) ("This court has recognized a claim under 42 U.S.C. § 1983 'for violation of [an inmate's] right to be protected from violence while in custody . . . where prison officials labeled an inmate as a 'snitch' in retaliation for the inmate petitioning prison and government officials for a redress of his grievances." (citing *Valandingham*)). In *Valandingham*, the plaintiff alleged that two prison officials had conspired to label him as a snitch with the intent of having him killed. 866 F.2d at 1138. The plaintiff also alleged that on a

---

[6] The Ninth Circuit is not alone in reaching this conclusion. *See Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018) (noting that it is "well understood that inmates known to be snitches are widely reviled within the correctional system," and thus "a number of courts have found an Eighth Amendment violation where a guard publicly labels an inmate a snitch, because of the likelihood that the inmate will suffer great violence at the hands of fellow prisoners.") (citing *Irving v. Dormire*, 519 F.3d 441, 450-51 (8th Cir. 2008); *Benefield v. McDowall*, 241 F.3d 1267, 1270-71 (10th Cir. 2001); *Watson v. McGinnis*, 964 F. Supp. 127, 131 (S.D.N.Y. 1997) (collecting cases)).

specific date, "he was approached by fellow prisoners and threatened with harm because [the defendant prison officials] had told other inmates in the law library that Valandingham was a snitch." *Id.* The Ninth Circuit reversed the district court's grant of summary judgment and remanded for trial. *Id.* at 1139.

The Ninth Circuit has reaffirmed *Valandingham*'s holding in two more recent unpublished cases. *Pinson v. Unknown Party*, 698 Fed. Appx. 445 (9th Cir. 2017) (reversing grant of summary judgment where prisoner "raised a triable dispute as to whether defendants were deliberately indifferent to her safety when they identified her as an informant, and whether this identification was the cause of the attacks and threats she suffered") (citing *Valandingham*); *Douglas v. Oregonian Pub. Co.*, 465 Fed. Appx. 714, 715 (9th Cir. 2012) (prisoner's allegation that "other inmates threatened him as a result of the state defendants' actions in falsely labeling him a 'snitch' . . . sufficiently alleged a Fourteenth Amendment violation of his right to safety while in custody").

With this framework in mind, the Court turns to Plaintiff's Fourteenth Amendment claims.

### 1.    *Deputy Machyo*

Plaintiff claims that Deputy Machyo violated his constitutional rights when the deputy loudly asked outside his cell if he wanted to attend a professional visit with two detectives. (Dkt. # 27-1 at 35.) According to Plaintiff, "[W]hen a person is talking outside the cell to an inmate inside the cell everything that is being said is heard by all inmates in the cell block." (*Id.*) Plaintiff further states that when he returned to his cell later in the day after Deputy Hatchell also stated in front of other inmates that Plaintiff had a visit with police, fellow inmates in his unit "tormented and harassed" him, called him "a Snitch, Rat[,] Informant," and threatened to fight

1   with him if they were at court at the same time, among other things. (Dkt. # 27-1 at 37.) He states

2   that the verbal abuse he suffered from the other inmates adversely affected his mental health,

3   pushing him close to harming himself. (*Id.*) Although Deputy Machyo presents a different

4   version of events, the Court must credit Plaintiff's version on summary judgment.

5       Viewing the evidence in Plaintiff's favor, the Court is not persuaded that Deputy Machyo

6   is entitled to summary judgment on this claim. It would be reasonable to infer, based on

7   Plaintiff's statements, that Deputy Machyo made an intentional decision with respect to the

8   conditions of Plaintiff's confinement that put Plaintiff at substantial risk of serious harm when he

9   stated, in a loud voice and within the hearing of the other inmates in Plaintiff's unit, that Plaintiff

10  had a professional visit with two detectives, thereby intimating that he was a snitch. "It is well

11  established that being revealed as a snitch may be sufficient to [establish a substantial risk of

12  serious harm]." *Sutton v. Wash. State Dep't of Corr.*, No. 13-5064, 2015 WL 4748233, at *7

13  (E.D. Wash. Aug. 11, 2015) (citing *Valandingham*, 866 F.2d at 1139). Moreover, a reasonable

14  jury could conclude that Deputy Machyo's statement was objectively unreasonable given that it

15  is "well understood that inmates known to be snitches are widely reviled within the correctional

16  system" and that there is a "likelihood that [inmates identified as such] will suffer great violence

17  at the hands of fellow prisoners." *Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018). Finally, a

18  reasonable jury could find that Deputy Machyo's actions caused Plaintiff's alleged injuries based

19  on Plaintiff's statement that when he returned from his professional visit with Detective Renihan,

20  inmates in his unit began to harass and threaten him, calling him a snitch, rat, and informant,

21  among other things.

22      Deputy Machyo argues that there is no evidence other inmates overheard his conversation

23  with Plaintiff and that Plaintiff's statement that this was a possibility was merely "self-serving."

(Dkt. # 193 at 8.) As noted above, however, Plaintiff states that inmates can hear everything that is being said to other inmates in the unit; this statement appears to be based on his personal knowledge as an inmate in 4-North and therefore is properly admitted to oppose summary judgment. *See Keenan*, 83 F.3d at 1090 n.1 (verified complaint "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." (internal quotations omitted)); *Nigro*, 784 F.3d at 497 (district court cannot disregard evidence at the summary judgment stage solely based on its self-serving nature, even if it is uncorroborated, unless it "states only conclusions and not facts that would be admissible in evidence"). Moreover, Plaintiff states that inmates in the unit began calling him a snitch when he returned from his professional visit with Detective Renihan, which reasonably supports the inference that inmates in the unit overheard Deputy Machyo's statement.

Deputy Machyo next argues that Plaintiff failed to prove that any information was communicated to other inmates for the purpose of increasing the risk of harm to Plaintiff or that he was actually assaulted or physically harmed as a result of the deputy's statements. (Dkt. # 193 at 8-9.) But deliberate indifference under *Castro* does not require a showing that a defendant intended to increase the risk of harm to the plaintiff or that the plaintiff suffered a physical injury; it is enough to establish exposure to a serious risk of harm. *See Castro*, 833 F.3d at 1071 (setting forth elements of a pretrial detainee's failure to protect claim); *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013) ("[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes."). The harm Plaintiff alleges he actually suffered was a severe decline in his mental health as a result of the threats. This is sufficient for purposes of deliberate indifference.

1   *See, e.g.*, *Glenn v. Cole*, No. 06-0151, 2010 WL 2303028 (E.D. Cal. June 7, 2010), *R & R*

2   *adopted*, 2010 WL 3746055 (E.D. Cal. Sept. 17, 2010) (finding deliberate indifference due to

3   labeling inmate a snitch where injuries were inmate's fear for his safety, stress, and mental

4   suffering resulting from being housed in administrative segregation).

5         Finally, Deputy Machyo argues that in the context of "snitch" cases in which courts have

6   determined that prison officials were deliberately indifferent, the holdings turned on the

7   retaliatory basis for the officials' actions. (Dkt. # 193 at 9.) Deputy Machyo maintains that there

8   is no evidence of any retaliatory intent in this case. (*Id.* at 9-10.) Again, Deputy Machyo seeks to

9   add elements to the deliberate indifference test. Retaliatory intent is not required to establish that

10  a government official was deliberately indifferent in failing to protect a pretrial detainee. *See*

11  *Castro*, 833 F.3d at 1071.

12        Because the Court has concluded a reasonable jury could find that Deputy Machyo

13  violated Plaintiff's Fourteenth Amendment right to be free from deliberate indifference to his

14  safety by identifying him as a snitch in front of other inmates, the Court must determine whether

15  Deputy Machyo is entitled to qualified immunity because this right was not clearly established at

16  the time of the incident. *See Saucier*, 533 U.S. at 201. In other words, the Court must determine

17  whether it would be clear to a reasonable deputy that his conduct was unlawful in the situation he

18  confronted. *Id.* at 202; *see also Kisela*, 138 S. Ct. at 1153 ("An officer cannot be said to have

19  violated a clearly established right unless the right's contours were sufficiently definite that any

20  reasonable official in the defendant's shoes would have understood that he was violating it.").

21  This inquiry "must be undertaken in light of the specific context of the case, not as a broad

22  general proposition." *Saucier*, 533 U.S. at 201.

23

1     "Because the focus is on whether the officer had fair notice that [his] conduct was

2     unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."

3     *Kisela*, 138 S. Ct. at 1152 (quoted source omitted, alteration added). The Supreme Court's

4     "caselaw does not require a case directly on point," but "existing precedent must have placed the

5     statutory or constitutional question beyond debate." *Id.* (quoted source omitted). It is Plaintiff's

6     burden to establish that the law was clearly established at the time of the incident in January

7     2018. *See Greene v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009), *vacated in part*, 661 F.3d

8     1201 (9th Cir. 2011).

9           At the time of the incident, it was clearly established that a jail official violates a pretrial

10    detainee's Fourteenth Amendment rights when the official acts with deliberate indifference to

11    inmate safety, judged under an objective reasonableness standard, and the official's action results

12    in the inmate being incarcerated under conditions posing a substantial risk of serious harm. *See*

13    *Castro*, 833 F.3d at 1068-71. Also at the time, the law was clearly established that telling other

14    inmates that a prisoner is a "snitch" violates the prisoner's right to be free from harm. *See*

15    *Valandingham*, 866 F.2d at 1138 (reversing grant of summary judgment on § 1983 claim for

16    denial of right not to be subjected to physical harm by prison employees, where prisoner alleged

17    that he was approached by fellow prisoners and threatened with harm because defendants had

18    told other inmates that he was a snitch); *Miller*, 976 F.2d 737 (9th Cir. 1992) (citing

19    *Valandingham* and recognizing "a claim under 42 U.S.C. § 1983 'for violation of [an inmate's]

20    right to be protected from violence while in custody . . . where prison officials labeled an inmate

21    as a 'snitch' in retaliation for the inmate petitioning prison and government officials for a redress

22    of his grievances"); *Pinson*, 698 Fed. Appx. at 445 (reversing grant of summary judgment based

23    on *Valandingham* where prisoner "raised a triable dispute as to whether defendants were

1    deliberately indifferent to her safety when they identified her as an informant, and whether this

2    identification was the cause of the attacks and threats she suffered"); *Douglas*, 465 Fed. Appx. at

3    715 (prisoner's allegation that "other inmates threatened him as a result of the state defendants'

4    actions in falsely labeling him a 'snitch' . . . sufficiently alleged a Fourteenth Amendment

5    violation of his right to safety while in custody"); *see also Irving v. Dormire*, 519 F.3d 441, 451

6    (8th Cir. 2008) (noting that four circuits have held that labeling an inmate a snitch violates the

7    guard's duty to protect inmates, and denying qualified immunity where a prison guard falsely

8    labeled an inmate as a snitch, concluding the guard was on fair notice that an inmate labeled as a

9    snitch faces substantial risk of serious harm: "after all, who better knows the opprobrium and

10    consequent effect thereof that attaches to the label of snitch than those who work daily within the

11    inmate population").

12          As detailed above, if Plaintiff's version of events is credited, a jury reasonably could

13    conclude that, under an objective standard, Deputy Machyo was deliberately indifferent to

14    Plaintiff's safety in violation of the Fourteenth Amendment when he allegedly identified Plaintiff

15    as a snitch within the hearing of other inmates. The above authority clearly establishes Plaintiff's

16    right not to be identified as a snitch in front of other inmates. Deputy Machyo argues that the

17    case law only places actors on notice that it is unlawful to *intentionally* provide information

18    labeling an inmate a snitch *directly* to other inmates, *with the goal of encouraging an inmate to*

19    *cause harm.* (Dkt. # 193 at 15.) Each of these factors goes to the officer's subjective intent. But

20    *Castro* clearly establishes that the subjective intent of an officer is irrelevant to failure to protect

21    claims brought by pretrial detainees. Based on *Castro* and the Ninth Circuit's "snitch" caselaw, it

22    would be clear to a reasonable officer that indicating a pretrial detainee is a snitch within the

23    hearing of other inmates violates the pretrial detainee's constitutional rights. Accordingly, the

1    Court concludes that Deputy Machyo is not entitled to qualified immunity on this claim, and his

2    motion for summary judgment should be denied.

3                    2.    *Deputy Hatchell*

4            Plaintiff states that when he was escorted to the area where professional visits are

5    conducted, Deputy Hatchell loudly stated in front of seven or eight inmates, "Brennan[,] you

6    down and around the corner so nobody sees you talking with the police." (Dkt. # 27-1 at 39.) As

7    noted above with respect to Deputy Machyo, Plaintiff further claims that when he returned to his

8    cell after the professional visit, inmates in his unit began to harass and threaten him. (*Id.* at 37.)

9            Deputy Hatchell's and Deputy Machyo's alleged statements were similar, but they

10   occurred in different contexts. As discussed above, Deputy Machyo spoke where inmates in

11   Plaintiff's unit could overhear, and later that day, those same inmates began to call Plaintiff a

12   snitch. Because the inmates who allegedly overheard the comment were the ones to harass

13   Plaintiff, a direct causal link between Deputy Machyo's alleged statement and the harm Plaintiff

14   suffered may be inferred. By contrast, even if the evidence is viewed in Plaintiff favor, there is

15   an insufficient basis upon which to reasonably infer that Deputy Hatchell's alleged statement led

16   to the harassment. Assuming the seven or eight inmates who were present overheard Deputy

17   Hatchell's comment, there is no evidence that these inmates threatened Plaintiff or otherwise

18   contributed to the threats Plaintiff received. There is no evidence in the record regarding the

19   identities of these inmates or any other basis upon which to reasonably infer that they were also

20   housed in 4-North or that they informed inmates in 4-North that Plaintiff was a snitch. Given the

21   absence of evidence in the record upon which to infer a causal connection between Deputy

22   Hatchell's alleged statement and the harm Plaintiff suffered, the Fourteenth Amendment claim

23   against the deputy should be dismissed.

1          3.      *Deputy Chavez*

2          Plaintiff claims that Deputy Chavez violated his constitutional rights when, in front of

3    another inmate, he asked Plaintiff why he had so many keep-separate orders. (Dkt. # 27-1 at 49;

4    Dkt. # 27-3 at 51.) He states that he was "harassed and threatened by other inmates after this."

5    (Dkt. # 27-1 at 51.)

6          Deputy Chavez does not dispute that he asked Plaintiff why he had so many keep-

7    separate orders. (Dkt. # 194 at ¶ 11.) He contends, however that his single, isolated question to

8    Plaintiff did not rise to the level of deliberate indifference. (*See* Dkt. # 193 at 7-9.) The Court

9    agrees. Viewing the evidence in the light most favorable to Plaintiff, no rational jury could

10   conclude that Deputy Chavez's conduct was objectively unreasonable or that he created

11   conditions subjecting Plaintiff to a substantial risk of suffering serious harm. As Deputy Chavez

12   points out, there are a number of reasons why keep-separate orders are issued, and his question to

13   Plaintiff did not provide any information to any other inmate about the identity of inmates he was

14   separated from or why they had to remain separate. (Dkt. # 194 at ¶ 9.) His question also did not

15   suggest that Plaintiff was a "snitch." Therefore, summary judgement should be granted in

16   Deputy Chavez's favor on Plaintiff's Fourteenth Amendment claim against him.

17   **C.  The PLRA's Physical Injury Requirement**

18         Because the Court has concluded that Deputy Machyo is not entitled to qualified

19   immunity on Plaintiff's Fourteenth Amendment claim, the Court must address his argument that

20   Plaintiff cannot recover compensatory damages for emotional or mental suffering because

21   Plaintiff experienced no physical injury as a result of his actions. The Court agrees.

22         The PLRA states: "No Federal civil action may be brought by a prisoner confined in a

23   jail, prison, or other correctional facility, for mental or emotional injury suffered while in

custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Ninth Circuit has held that this provision "applies only to claims for mental and emotional injury," and requires "a prior showing of physical injury that need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002). To the extent a plaintiff's claims for compensatory, nominal, or punitive damages are premised on alleged constitutional violations, "and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred." *Id.* at 630.

In this case, Plaintiff neither claims nor presents evidence that he suffered a physical injury as a result of Deputy Machyo's alleged violation of his constitutional rights. Because he alleges purely emotional injury, there is no other basis in the record upon which to award him compensatory damages. *See Carey v. Piphus*, 435 U.S. 247, 248 (1978) (holding that absent proof of actual injury, only nominal damages may be awarded for constitutional violations); *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986) ("the abstract value of a constitutional right may not form the basis for § 1983 damages"). Accordingly, his claim for compensatory damages against Deputy Machyo should be dismissed. A jury, however, may award Plaintiff nominal damages, even though he did not expressly request them, if they find in his favor on his Fourteenth Amendment claim at trial. *See Schneider v. County of San Diego*, 285 F.3d 784, 794-95 (9th Cir. 2002) (award of nominal damages in § 1983 cases is mandatory as "symbolic vindication" of a plaintiff's constitutional rights whether or not he has been physically injured); *Oliver*, 289 F.3d at 630 (nominal damages available even if not expressly requested in complaint).

1

## V.    CONCLUSION

2      The Court recommends (1) Deputy Hatchell's motion for summary judgment (dkt. # 192)

3  be GRANTED and that the only claim against him in this lawsuit be DISMISSED with

4  prejudice; (2) Deputy Machyo and Deputy Chavez's motion for summary judgment (dkt. # 193)

5  be GRANTED in part as follows: (a) Plaintiff's First Amendment retaliation claim against

6  Deputy Machyo should be DISMISSED with prejudice, (b) Plaintiff's Fourteenth Amendment

7  failure to protect claim against Deputy Chavez should be DISMISSED with prejudice, (c)

8  Plaintiff's claim for compensatory damages against Deputy Machyo should be DISMISSED with

9  prejudice; and (3) Deputy Machyo and Deputy Chavez's motion for summary judgment (dkt. #

10  193) should be DENIED as to Plaintiff's Fourteenth Amendment failure to protect claim against

11  Deputy Machyo. A proposed order accompanies this Report and Recommendation.

12      Objections to this Report and Recommendation, if any, should be filed with the Clerk and

13  served upon all parties to this suit by no later than **September 5, 2019**. Objections, and any

14  response, shall not exceed 12 pages. Failure to file objections within the specified time may affect

15  your right to appeal. Objections should be noted for consideration on the District Judge's motion

16  calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall

17  be filed no later than **fourteen (14)** days after service and filing of objections. If no timely

18  objections are filed, the matter will be ready for consideration by the District Judge on the date

19  that objections were due.

20      Dated this 16th day of August, 2019.

21

22  _____
    MICHELLE L. PETERSON

23  United States Magistrate Judge